U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR - 3 2018

TONY R. MOORE, CLERK
BY: _____
       DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **TERRANCE RAYMOND** | **CIV. ACTION NO. 2:16-00526** |
| **VERSUS** | **JUDGE JAMES T. TRIMBLE, JR.** |
| **TALOS ENERGY, LLC, ET AL** | **MAG. JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #18) filed by Defendants, Talos Energy LLC, Talos Energy Offshore, LLC, Talos Gulf Coast Offshore, LLC, Energy Resource Technology GOM, LLC, and Louis Martin who move the court for judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL STATEMENT

On March 24, 2015, Plaintiff, Terrence Raymond, was working on a fixed platform on the Outer Continental Shelf approximately 125 miles from Dulac, Louisiana;[1] at the time, Raymond was employed by Oilfield Production Contractors as a catering hand.[2] At about 1:30 p.m, while folding clothes, Raymond began sweating, became lightheaded and dizzy, and fell to the floor.[3] At 3:34 p.m., Raymond was transported by helicopter from the platform to Dulac, Louisiana where he arrived at 4:51 p.m.[4]

After arriving at Dulac, Raymond was met by an Oilfield Production Contractor representative and driven to West Jefferson Medical Center ("West Jefferson") for treatment.[5] At approximately 6:36 p.m., Raymond was admitted to West Jefferson with a

---

[1] Defendants' exhibit A, Terrence Raymond depo. p. 104; Defendants exhibit B, Louis Martin depo. ¶ 3.
[2] Defendants' exhibit A, Raymond depo. pp. 101-102, 104.
[3] Id. pp. 130, 116-117.
[4] Id. p. 148.
[5] Id. pp. 150-151.

1

complaint of "bad headaches."[6] Raymond was first examined by a physician at West Jefferson at approximately 11:04 p.m on March 24, 2015.[7] At approximately 11:16 p.m., after a CT scan was performed, Raymond was diagnosed with a subarachnoid hemorrhage and hypertension; a CT angiography was performed which revealed an aneurysm.[8]

At approximately 4:48 a.m. on March 25, 2015, another CT scan was performed which showed "no significant change in the appearance of subarachnoid hemorrhage" since the previous CT scan.[9] On that same day, at approximately 7:00 a.m. Raymond underwent a cerebral angiogram and coil embolization of aneurysm.[10] After the procedure, a CT scan performed on March 26, 2015 found that the subarachnoid hemorrhage had decreased and there was no evidence of any problems.[11] Raymond was discharged on April 3, 2015; upon discharge Raymond had no complaint other than "some headaches, but none currently."[12]

There was a time span of about ten and a half hours from the time Raymond began feeling ill and the time he was first examined by a physician; within that time period, Raymond was on the platform for two-and-a-half hours.

Raymond did not seek any medical treatment from July 2015 until he was examined by Dr. William Procell on July 26, 2016. In follow-up visits to Dr. Procell on January 23, 2017 and February 23, 2017, Raymond denied any symptoms of neurological complaints, including headache, lightheadedness, difficulty balancing, lack of

---

[6] Defendants' exhibit C, p. 4, Defendants' exhibit A, p. 54, 57.
[7] Defendants' exhibit C, p. 12.
[8] Id. pp. 18, 449-450.
[9] Id. pp. 450-451.
[10] Id. p. 44.
[11] Id. pp. 451-452.
[12] Id. pp. 23-24.

coordination and fainting.[13] There is no medical evidence to indicate that Raymond's cerebral aneurysm/subarachnoid hemorrhage was caused by his work offshore.[14]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[15] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[16] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[17] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[18] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[19] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[20] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[21] If the evidence is merely

---

[13] Defendants' exhibit D, pp. 4-9.
[14] Defendants' exhibit A, p. 70.
[15] Fed. R. Civ. P. 56(c).
[16] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[17] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[18] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[19] Anderson, 477 U.S. at 249.
[20] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[21] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

colorable, or is not significantly probative, summary judgment may be granted.[22] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[23]

## LAW AND ANALYSIS

Plaintiff asserts that Defendants were negligent in (1) failing to train their employees to address medical issues and safety of those on the platform, (2) failing to give proper medical attention to plaintiff on the platform, (3) failing to timely airlift plaintiff all of the way to the hospital, (4) failing to provide platform workers a safe place, and (5) delaying Plaintiff's departure from the platform.

Plaintiff complains that at the time of the onset of his illness, and even though there was a helicopter available, as well as a pilot, Defendants failed to immediately transport him due to an inspection taking place.

*Negligence*

Defendants maintain that Plaintiff cannot meet his burden of proof on the element of medical causation. For a negligence claim, Plaintiff must establish that (1) Defendants had a duty to conform their conduct to a specific standard of care; (2) Defendants failed to conform their conduct to the appropriate standard of care (breach of duty); (3) Defendants' substandard conduct was a cause-in-fact of Plaintiff's injuries, (4) Defendants' substandard conduct was the legal cause of Plaintiff's injuries and (5) actual injuries.[24]

---

[22] Anderson, 477 U.S. at 249-50.
[23] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).
[24] In re W. Feliciana Acquisition, LLC, 744 F.3d 352, 359-360 (5th Cir. 2014).

4

Defendants assert that there is no record or report from any medical doctor who examined Plaintiff that asserts that any injury Plaintiff might have was caused by a delay in treatment of his cerebral aneurysm/subarachnoid hemorrhage (hereinafter referred to as an "aneurysm"). Thus, Defendants seek dismissal of Plaintiff's claims based on lack of causation.

To establish a genuine issue of material fact, Plaintiff relies solely on excerpts from the sworn deposition testimony of Dr. Donald Gervais, who Plaintiff asserts was his treating physician. Dr. Gervais first saw Plaintiff after being referred by Plaintiff's counsel.[25] Dr. Gervais saw Plaintiff on August 18, 2016[26] and treated him until June 5, 2017; Dr. Gervais saw Plaintiff a total of six times..[27] To rebut, Defendants submit the entire deposition of Dr. Gervais and note that Dr. Gervais testified that the entire time he treated Plaintiff, he was not informed of the alleged delay in transportation until Plaintiff's counsel so informed him right before his deposition.[28] Dr. Gervais also testified that he reviewed no medical records from Plaintiff's medical providers in connection with any treatment provided Plaintiff.[29] Every objective test performed by Dr. Gervais was normal, or in other words, all diagnostic studies performed[30] on Plaintiff were normal and warranted no further testing.[31]

Dr. Gervais testified that Plaintiff's aneurysm was "an inherited disorder" and nothing that occurred offshore caused either the aneurysm or anything that flowed from

---

[25] Id.
[26] Defendants' exhibit E, Donald Gervais depo. p. 10.
[27] Plaintiff's exhibit B, Donald Gervais depo. p. 6.
[28] Defendants' exhibit E, Gervais depo. pp. 79-81.
[29] Id. p. 12.
[30] Tests included an EEG study, a transcranial Doppler exam, and a second more extensive 5- day EEG study.
[31] Id. p. 11.

5

it.[32] Furthermore, based on all of his testing and/or studies, Dr. Gervais found no deficits or abnormal neurological findings, only subjective complaints of headaches.[33] In addition to not being able to state with a degree of certainty that the cause of the headaches was from Defendants' alleged delay in transportation, Dr. Gervais testified that it would be speculation to attempt to assign a percentage of fault to each hour of delay in transportation.[34] Plaintiff relies on Dr. Gervais' testimony that a delay could potentially cause positive findings in the neurological testing.[35] Significantly, it is noted that there was an approximate two-hour delay between the onset of Plaintiff's symptoms to Plaintiff's departure from the platform. There was a delay of about five (5) hours from the time Plaintiff arrived at the hospital until the first diagnostic test (CT scan) was performed. Thereafter, there was an almost eight (8) hour delay between the time that Plaintiff was diagnosed and the time that he underwent a procedure to resolve his intracranial problems. As indicated by Dr. Gervais himself, an attempt to ascribe any particular portion of Plaintiff's present symptomatology to any specific time period between the onset of Plaintiff's complaints and the corrective procedure performed at the hospital at approximately 7:00 a.m. the following morning, would indeed be rank speculation. Thus, Plaintiff has failed to create a genuine issue of material fact for trial as to causation.

*Intentional tort*

An intentional tort requires a plaintiff to show that the tortfeasor either "(1) consciously desires the physical result of his act, whatever the likelihood of that result

---

[32] Id. pp. 77-78.
[33] Id. p. 31.
[34] Id. p. 88.
[35] Id. p. 20.

6

happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result."[36]

The same result applies to any claim Plaintiff may have for an intentional tort. In addition to failing to provide summary judgment that any Defendant attempted to harm Plaintiff, there is no connection between Plaintiff's alleged injury and any delay in treatment. It is not disputed that Plaintiff's aneurysm was not caused by any offshore work and there is no evidence that any Defendant intended to injure Plaintiff. Accordingly, any claim for intentional tort must fail and will be dismissed.

## CONCLUSION

Based on the foregoing, Defendants are entitled to summary judgment in their favor, dismissing Plaintiff's claims with prejudice at Plaintiff's costs.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 3rd day of April, 2018.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT COURT

---

[36] Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981).